# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3369 | **DATE** | 10/18/2002 |
| **CASE TITLE** | Reliance National Indemnity Ins. v. Lexington Ins. Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's and Defendant's Cross-Motions for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, the Plaintiff's Motion for Summary Judgment [26-1] is DENIED in its entirety; the Defendant's Motion for Summary Judgment [19-1] is GRANTED in part and DENIED in part. This matter will be tried solely on these two remaining issues: the proper allocation of Property Damage and Contractors Equipment. This Court encourages the parties to confer to resolve the numbers on their own, and to that end, orders the parties to meet and confer within 21 days of the date of this order for the purpose of seeking agreement on the remaining two issues.

(11) ■ [For further detail see attached memorandum opinion and order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 23 2002 | |
| | Notified counsel by telephone. | | date docketed | 39 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RELIANCE NATIONAL INDEMNITY COMPANY, a Wisconsin corporation, | )<br>)<br>) No. 01 C 3369<br>) |
| Plaintiff, | )<br>) HONORABLE DAVID H. COAR |
| v. | )<br>) |
| LEXINGTON INSURANCE COMPANY, a Delaware corporation, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Reliance National Indemnity Insurance Company ("Reliance") brings this three-count complaint for declaratory judgment and other relief against Lexington Insurance Company ("Lexington") seeking a declaration that Reliance is entitled to reimbursement of at least $768,261.11 that Reliance paid to resolve a first-party property damage claim arising out of a fire at a premises that both insurance companies insured. Before this Court is Lexington's motion for summary judgment. Simultaneously before this Court is Reliance's cross motion for summary judgment. For the reasons stated below, this Court DENIES Reliance's motion for summary judgment in its entirety and GRANTS in part and DENIES in part Lexington's motion for summary judgment.

## I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Commercial Underwriters Ins. Co. v. Aires Environmental Servs., Ltd., 259 F.3d 792, 795 (7th Cir. 2001). The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by summary judgment. Jupiter Aluminum v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P 56(c); Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To oppose the motion for summary judgment successfully, the non-movant cannot rest on the pleadings

alone, but must designate *specific facts* in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992). A scintilla of evidence in support of the non-movant's position is insufficient, and the non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

On cross-motions for summary judgment, each movant individually must satisfy the requirements of Rule 56. Great West Cas. Co. v. Rogers Cartage Co., No. 00 C 6621, 2001 WL 1607608, at *1 (N.D. Ill. 2001); Proviso Ass'n of Retarded Citizens v. Village of Westchester, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996). Thus, the traditional standards for summary judgment still apply even though both parties have moved for summary judgment. Blum v. Fisher and Fisher, Attorneys at Law, 961 F. Supp. 1218, 1222 (N.D. Ill. 1997). This Court considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration. O'Regan v. Arbitration Forums, Inc., 246 F.2d 975, 983 (7th Cir. 2001). This "Janus-like perspective . . . sometimes forces the denial of both motions," but only where there are material facts in dispute. Buttitta v. City of Chicago, 803 F. Supp. 213, 217 (N.D. Ill. 1992).

## II. Background[1]

Reliance is a Wisconsin insurance company with its principal place of business in Philadelphia, Pennsylvania. Lexington is a Delaware insurance company with its principal place of business in Boston, Massachusetts. Reliance issued a commercial line insurance policy No. NS251202701 to Central Systems, Inc. ("CSI") for the policy period November 1, 1999 to November 1, 2000 (the "Reliance Policy"). By way of endorsement, Envirosolve Environmental Management, Inc. was added as a Named Insured to the Reliance Policy. Endorsement #1 of the Reliance Policy, entitled "Description of Premises," lists as Premises No. 2, 2255-59 N. Ralston Avenue, Indianapolis, IN 46218 (the "Ralston facility"). In pertinent part, the policy limits of the Reliance Policy are as follows:

| Item | Insurance |
| --- | --- |
| Real Property | $ 1,200,000 |
| Contractors Equipment | $ 300,000 |
| Tanks and Equipment | $ 386,766 |
| Fences | $ 50,000 |
| Property of Others | $ 2,500 |

The Reliance Policy includes an "Other Insurance" clause that states:

---

[1] The facts listed below are either undisputed or deemed admitted by the parties because their Local Rule 56.1 materials either 1) inappropriately denied the material fact by citing to an exhibit that agreed with the other party's statement of material facts, or 2) was unsupported by proper citation that specifically referred to the record, affidavits, or other supporting materials relied upon for disagreement, as required by the local rules, which this Court strictly enforces. Further, any statements, responses, or "additional facts" that are not supported by the record, or that are supported with citations to entire exhibits are disregarded. See Johnson v. Indopco, Inc., 887 F.Supp. 1092, 1095 (N.D. Ill. 1995). "[D]istrict courts are not obliged in our adversary system to scour the record looking for factual disputes . . . ." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994).

G.  OTHER INSURANCE

   1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.

   2. If there is other insurance covering the same loss or damage, other than that described in 1 above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

Lexington issued an insurance policy to Ecological Systems Inc. ("ESI"), a company that took over CSI sometime before Lexington issued its insurance policy. On November 17, 1999, Lexington's underwriter, Midwestern Risk Specialists, Inc. ("Midwestern"), sent a quotation of coverage to ESI's broker, Professional Design Insurance Management ("PDI"), stating the Amount of Insurance as $8,000,000 per occurrence primary and quoting the premium as $76,253. On that same day, Midwestern sent a revised quotation of coverage to PDI, stating the Amount of Insurance as $8,000,000 per occurrence primary and listing the premium as $131,916.

On December 1, 1999, Ken McComb ("McComb") of PDI sent a letter transmittal to Sarah Leonard ("Leonard") of Midwestern requesting Leonard to bind coverage for the Lexington Policy effective December 1, 1999. On December 6, 1999, Leonard sent a letter to McComb indicating that Midwestern received confirmation of binding from Lexington with the Amount of Insurance listed as $8,000,000 per occurrence primary and listing the premium as $131,916. Lexington issued a commercial property insurance policy No. 4013536 (the "Lexington Policy") to its Named Insured, ESI, for the policy period December 1, 1999 to

December 1, 2000. Lexington, however, did not actually issue its policy to ESI until after the loss at the Ralston facility on December 9, 2000.

The declarations page of the Lexington Policy lists ESI's address as 2255 Ralston Avenue, Indianapolis, Indiana 46218 and states that it covers all risk of direct physical loss or damage excluding flood or earthquake. The declaration page further provides under the Schedule of Covered Locations that the description of the premises with the $8,000,000 limit of liability is "PER SCHEDULE ON FILE WITH THE COMPANY." The Lexington Policy contains an Occurrence Limit of Liability Endorsement which provides in pertinent part:

It is understood and agreed that the following special terms and conditions apply to this policy:

. . .

The premium for this policy is based upon the Statement of Values on file with the Company, or attached to this policy. In the even of loss hereunder, liability of the Company, subject to the terms of paragraph one (1) above, shall be limited to the least of the following:

    a.    The actual adjusted amount of the loss, less applicable deductible(s).

    b.    The total stated value for the property involved, as shown in the latest Statement of Values on file with the Company, less applicable deductible(s).

    c.    The limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto this policy.

The Lexington Policy also contains an Agreed Amount Endorsement which includes an Agreed Amount Schedule. This Agreed Amount Schedule references agreed amounts "per Statement of Values on file with the Company." While McComb stated that he never received, saw, or prepared a document embodying Lexington's "Statement of Values" for the Ralston facility, he supplied Leonard with Acord Property Section forms ("Acord forms") that contained the values broken down by location, including values for the Ralston facility. These Acord forms

-6-

constituted the Statement of Values on file with the Company as referenced in the Agreed Amount Endorsement and Occurrence Limit of Liability Endorsement of the Lexington Policy. The Acord forms were dated 12/1/99, and they were sent to Leonard prior to the issuance of the binder of insurance on December 6, 1999.

The Lexington Policy also contains an "Other Insurance" clause. It provides:

12. OTHER INSURANCE

This Policy does not cover any loss or damage which at the time of the happening of such loss or damage is insured by, or would, but for the existence of this Policy, be insured by any other insurance policy or policies either primary or excess.

On December 9, 1999, a fire occurred at the Ralston facility, causing extensive damage to the facility totaling $1,577,726.88 after deductible. Both Lexington and Reliance's policies were in full force and effect at the time of the Insureds' loss. The Insureds reported notice of the fire and resulting losses to Lexington and Reliance. Lexington allocated the loss between the Lexington and Reliance policies, asserting that (1) Lexington's Policy did not provide blanket coverage for the loss, and (2) Lexington's policy did not provide primary coverage for the Ralston facility loss, but instead would cover that claim jointly with Reliance in "proportionate share of the loss up to their policy limits." The allocation was as follows:

| Item | Loss | Lexington payment | Reliance payment |
|---|---|---|---|
| Building | $957,454.52 | $478,727.26 | $478,727.26 |
| Personal Property | $228,427.31 | $ 7,378.20 | $221,049.11 |
| Contractors Equipment | $ 75,164.80 | $ 55,914.80 | $ 19,250.00 |
| Tanks and Equipment | $314,816.10 | $262,346.79 | $ 52,469.36 |
| Fences | $ 1,864.10 | $ 932.05 | $ 932.05 |
| Deductible: | - $10,000.00 | - $ 3,333.33 | - $ 6,666.67 |
| Total | $1,567,726.88 | $801,965.77 | $765,761.11 |

The allocation was based on the limits of liability in the Lexington and Reliance policies. After the fire at the Ralston facility, Lexington asserted that it had in its file a "Schedule of Values" that purports to state the values of property of the Ralston facility as of December 1, 1999:

| | |
|---|---|
| Building: | $1,200,000 |
| Personal Property:[2] | $ 10,000 |
| Fence: | $ 50,000 |
| Tanks & Equipment | $ 500,000 |

The Acord forms do not include Lexington's coverage for contractors equipment, which Lexington included in its apportionment of the loss as being $1,115,028. On September 8, 2000, Reliance issued two checks to CSI totaling $768,261.11. Lexington has paid $801,965.77 to the Insureds for the loss. On May 8, 2001, Reliance filed the instant action.

### III. Discussion

As a federal court sitting in diversity jurisdiction, this Court applies state substantive law and federal procedural law. See Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001) citing Erie v. Tompkins, 304 U.S. 64, 78 (1938). Where there is no disagreement between the laws of the contact states, the law of the forum state applies. Jean v. Dugan, 20 F.3d 255, 260 (7th Cir. 1994). If, however, there is a conflict between the laws potentially applicable, federal courts apply the choice of law principles of the forum state in determining which state's substantive law to apply. Jupiter, 225 F.3d at 873.

Because Lexington has identified a potential conflict between Illinois and Indiana law in interpreting conflicting "other insurance" clauses, this Court must apply the conflict-of-laws

---

[2] It was McComb's understanding that the $10,000 for personal property that he submitted on the Acord forms included only property of others in the care, custody, or control of Lexington's insured, and not the insured's own property.

analysis of the forum state--here, Illinois--to determine which state's substantive law applies. See Jupiter Aluminum v. Home Ins. Co., 225 F.3d 868, 873 (7th Cir. 2000). When an insurance policy lacks a choice of law provision, as the insurance policies in this case lack, Illinois courts employ the "most significant contacts" test in determining which substantive law applies to the contracts. Id. Under this test, insurance policy provisions generally are governed by the location of the subject, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract. Id.;Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co., 166 Ill.2d 520, 526-27 (1995). Both the Reliance and Lexington insurance policies were issued to insureds based in Indiana at the same Indiana address, and the insured location where the loss occurred was in Indiana. Therefore, Indiana law applies. Accord Id. at 874 (citing cases and stating that, when policies cover properties or risks located in one state, the law of the state in which the insured property can be found will usually govern).

Having determined that Indiana law governs, this Court turns to the insurance contracts at issue in this case. The interpretation of insurance contracts is primarily a question of law for the court. Standard Mut. Ins. Co. v. Pleasants, 627 N.E.2d 1327, 1329 (Ind. Ct. App. 1994) citing Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind. 1992). In construing a written insurance contract, a court may not extend insurance coverage beyond that provided in the contract, nor may it rewrite the clear and unambiguous language of an insurance contract. Id. The fact that parties disagree as to the interpretation of the contract does not establish an ambiguity; rather, the contract is ambiguous only if it is susceptible to more than one interpretation and reasonable persons would honestly differ as to its meaning. Id.

Neither party disputes that the Lexington Policy was a primary policy. At issue in this case is whether the Lexington Policy was primary as to the Reliance Policy, or if the Reliance Policy also was a primary policy, which would require Reliance to pay its prorated share of the loss. In addition, Reliance argues that apportionment should be based on Lexington's $8,000,000 policy limit rather than its "Statement of Values." This Court addresses each issue in turn.

Interpretation of the Insurance Policies

Both the Reliance Policy and the Lexington Policy contain "Other Insurance" clauses in their policies that purport to determine respective liability when the insured has another policy. The Reliance Policy clause states:

G. OTHER INSURANCE

1. . . .

2. If there is other insurance covering the same loss or damage, . . ., we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will no pay more than the applicable Limit of Insurance.

The Lexington Policy clause states:

G. OTHER INSURANCE

This policy does not cover any loss or damage which at the time of the happening of such loss or damage is insured by, or would, but for the existence of this Policy, be insured by any other insurance policy or policies either primary or excess.

Indiana courts have identified three kinds of "Other Insurance" clauses: (1) a *pro rata* clause restricting liability upon concurring insurers to an apportionment basis; (2) an excess clause restricting liability upon on insurer to excess coverage after an insurer has paid up to its policy limits; and (3) an escape clause avoiding all liability in event of other insurance. United

-10-

Farm Bureau Mut. Ins. Co. v. Nationwide Mut. Fire Ins. Co., 678 N.E.2d 1165, 1167 (Ind. Ct. App. 1997). The "Other Insurance" clause in the Reliance Policy is an excess clause, because it purports to cover the insured "in excess of the amount due from that other insurance." The Lexington Policy, on the other hand, contains an escape clause because it allows Lexington to avoid all liability for losses that "would, but for, the existence of this Policy, be insured by any other insurance policy or policies either primary or excess." Under Indiana law, conflicting "Other Insurance" clauses create a "circular riddle," and courts therefore hold the conflicting clauses, regardless of the nature of the clauses, to be "mutually repugnant" and they are disregarded *in toto*. Ind. Ins. Co. v. Am. Underwriters, Inc., 304 N.E.2d 783, 788 (Ind. 1973). The result is that each insurer is liable for a prorated amount of the resultant damage not to exceed its policy limits.[3] Id.; see also United Farm Bureau, 678 N.E.2d at 1167 (stating that Indiana "has adopted a mandatory *pro rata* rule where 'other insurance' clauses conflict"); Rockwood Ins. Co. v. Ill. State Med. Inter-Insurance Exchange, 646 F.Supp. 1185, 1191 (N.D.

---

[3] The Indiana Supreme Court identified several persuasive reasons for this rule: It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers; it does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e.g., first in time, specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all the insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the 'other insurance' clauses. Finally, the rule is simpler, more convenient, and easier to apply than the majority rule.

Id. at 408.

Ind. 1986) (holding as a matter of Indiana law that insurers with conflicting *pro rata* and excess "other insurance" clauses were both primary insurers, each liable for a prorated amount of any settlement, cost of defense, or loss up to the limits of each policy); United Servs. Auto. Ass'n v. Am. Interinsurance Exchange, 416 N.E.2d 875, 879 (Ind. Ct. App. 1981) (holding that both insurers share primary liability for the loss where there were identical "other insurance" clauses that were irreconcilable and mutually repugnant); Ind. Ins. Co. v. Federated Mut. Ins. Co., 415 N.E.2d 80, 84 (Ind. Ct. App. 1981) (disregarding conflicting escape and excess "other insurance" clauses that were irreconcilable and holding that the insurers share primary liability for the loss).

Reliance argues that the two clauses do not conflict because the Lexington Policy specifically states that it is primary on its Declarations page and it cites Am. Economy Ins. Co. v. Motorists Mut. Ins. Co., 593 N.E.2d 1242, 1246 (Ind. Ct. App. 1992) for support. In American Economy, a dispute arose between two different automobile insurers over an accident that occurred in a vehicle owned by a person other than the driver. The driver sued both the owner's insurance carrier, American Economy Insurance Company ("American"), and her own insurance carrier, Motorists Mutual Insurance Company ("Motorists"), to compensate her for her injuries. Id. Both insurance polices had "Other Insurance" clauses, but the Indiana Court of Appeals held that the clauses were not conflicting because American's "Other Insurance" clause specifically provided that it carried primary insurance for the owner's vehicle when it was involved in an accident, while Motorists's policy clearly stated it carried only excess coverage.[4] Id.

---

[4] American's "Other Insurance" clause stated:
For any covered *auto you* [Charles Becker] own, this policy provides primary insurance. For any covered *auto you* [Charles Becker] don't own, the insurance provided by this policy is excess over any other collectible insurance.

-12-

Reliance argues that, like the insurance carrier in <u>American Economy</u>, Lexington's policy specifically states that it is primary and therefore the "Other Insurance" clauses do not conflict. This Court disagrees. Unlike the policy in <u>American Economy</u>, Lexington's "Other Insurance" clause does *not* specifically state that it will provide primary insurance. Rather, "8,000,000 per occurrence primary" appears on the Declarations page and Reliance asks this Court to interpret the word "primary" to the exclusion of the rest of the policy, which this Court declines to do. See, e.g., <u>Haire v. State Farm Mut. Auto Ins. Co.</u>, No. F. 92-82, 1992 WL 297610, at *4 (N.D. Ind. Oct. 7, 1992) (stating that "the meaning of a contract is to be determined from an examination of all its provisions, not from a consideration of individual words, phrases or even paragraphs read alone") <u>citing</u> <u>Oser v. Comm. Union Ins. Cos.</u>, 409 N.E.2d 706, 708 (Ind. Ct. App. 1980). Because the Lexington Policy contains an "Other Insurance" escape clause that clearly absolves it of liability in the event that there is other insurance, *either primary or excess*, it is clear that its policy is a primary policy with limited liability. Like the Reliance Policy, the Lexington Policy purports to be primary only on the condition that there is no "other insurance." Therefore, this Court finds that the "Other Insurance" clauses of the Reliance and Lexington policies conflict and are mutually repugnant; accordingly, the clauses are disregarded and both Reliance and Lexington share primary liability for the loss at the Ralston facility based on their respective policy limits.

Apportionment of the Loss

After determining that Reliance and Lexington share primary liability for the loss of their insureds, this Court must determine whether Lexington prorated the damages correctly according to each policy's limits of liability. Because the Declarations page of the Lexington Policy states

"$8,000,000 per occurrence primary," Reliance argues that Lexington's policy provided blanket coverage and that the loss should be prorated based on Lexington's $8,000,000 limit. Reliance's interpretation, however, again ignores other provisions of the Lexington Policy which qualify that $8,000,000 limit: (1) the Occurrence Limit of Liability, which states that the limits of liability will be the lesser of three amounts, one being the Statement of Values on file with the Company, which is less than the amount on the Declarations page; (2) the Agreed Amount Endorsement, which allows for a waiver of any coinsurance penalty in place of which there is an Agreed Amount for each location "per the Statement of Values on file with the Company"; and (3) the Schedule of Covered Location that bears the description of the premises with the $8,000,000 limit of liability is "PER SCHEDULE ON FILE WITH THE COMPANY." Further, the record is clear that the "Statement of Values" on file with the company was obtained from Lexington's insured's broker, McComb, on Acord forms that were dated 12/1/99 and sent to Lexington's underwriter prior to the issuance of the binder of insurance on December 6, 1999. As the Indiana Supreme Court stated in Vernon Fire & Cas. Ins. Co. v. A.W. Sharp, 349 N.E.2d 173, 177-78 (Ind. 1976):

> A distinction must be made between a policy which speaks in terms of a lumpsum obligation or value of the property and one which separately schedules different items of property. In the latter case, each separately treated item of property is in effect covered by a separate contract of insurance and the amount recoverable with respect to a loss affecting such property is determined independently of the other items of property.

Because the Lexington Policy separately scheduled different items of property, it is a scheduled policy with specific limits for particular items and not a blanket coverage policy.

That being said, this Court cannot accept as a matter of law Lexington's apportionment of the loss because the record is unclear as to two of the scheduled amounts of the Lexington Policy. Lexington allocated the loss as follows:

| Item | Loss | Lexington payment | Reliance payment |
|---|---|---|---|
| Building | $957,454.52 | $478,727.26 | $478,727.26 |
| Personal Property | $228,427.31 | $ 7,378.20 | $221,049.11 |
| Contractors Equipment | $ 75,164.80 | $ 55,914.80 | $ 19,250.00 |
| Tanks and Equipment | $314,816.10 | $262,346.79 | $ 52,469.36 |
| Fences | $ 1,864.10 | $ 932.05 | $ 932.05 |
| Deductible: | - $10,000.00 | - $ 3,333.33 | - $ 6,666.67 |
| Total | $1,567,726.88 | $801,965.77 | $765,761.11 |

Lexington asserts that the allocation was based on the limits of liability in the Lexington and Reliance policies. This Court, however, finds that there is an issue of fact concerning two of the Lexington limits. First, as to the $10,000 Personal Property limit, there is a genuine issue of fact whether that limit was correct. McComb states that it was his understanding that the $10,000 limit he provided for Personal Property included only property of others in the care, custody, or control of Lexington's insured, and not the insured's own property. Second, as to the Contractors Equipment limit, the record shows that, while the Acord forms did not provide a coverage amount for contractors equipment, Lexington included in its apportionment of the loss as the limit being $1,115,028. Summary judgment, therefore, is DENIED as to the allocation of loss between Reliance and Lexington.

### IV. Conclusion

For the foregoing reasons, this Court DENIES Reliance's motion for summary judgment in its entirety, and GRANTS in part and DENIES in part Lexington's motion for summary judgment.

-15-

This matter will be tried solely on these two remaining issues: the proper allocation of Property Damage and Contractors Equipment. This Court encourages the parties to confer to resolve the numbers on their own, and to that end, orders the parties to meet and confer within 21 days of the date of this order for the purpose of seeking agreement on the remaining two issues.

**Enter:**

_____

**David H. Coar**

**United States District Judge**

**Dated: October 18, 2002**